United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ERNESTO LIRA,

    Plaintiff,

v.

CALIFORNIA DEPARTMENT
OF CORRECTIONS; et al.,

    Defendants.
                                     /

No. C 07-1447 SI (pr)

**ORDER OF SERVICE**

## INTRODUCTION

Ernesto Lira, currently incarcerated at Deuel Vocational Institute, filed a pro se civil rights action under 42 U.S.C. § 1983. His complaint is now before this court for initial review under 28 U.S.C. § 1915A because he was a prisoner when he filed this action.

## BACKGROUND

In his complaint, Lira complains about events that occurred in January - April 2004, while he was incarcerated at Pelican Bay State Prison. At the time, he apparently was scheduled to be paroled on March 10, 2004.

On January 20, 2004, a shaving razor was issued to Lira for his shower. As Lira "approach[ed] the pod door he kick out his razor, showered, and returned to his cell." Complaint, p. 9. (He does not state that this was the normal procedure for an inmate to return a razor and this method of disposal apparently was the genesis of all the later problems.) In any event, after the shower program for the unit ended, defendants Morrison and Herdina came to

Lira's cell and asked him to give back the razor blade he had taken out of the razor that had been issued to him. Lira told them he didn't have it. Defendants Morrison and Herdina put him in handcuffs and took him to a holding cell, where they did an unclosed body search and scanned him with a hand-held metal detector. The metal detector did not detect any metal on Lira.

Defendants Morrison and Herdina then took Lira to the C-facility control area, reportedly pursuant to the directions from defendant Horne. When they arrived at the C-control, Lira was shoved against a wall and directed not to move. When he complained, defendant Durham told him to shut up and asked for a metal detector. Defendant Durham then scanned Lira's body with a metal detector. Lira states that the metal detector at first indicated no metal on his body, but then Durham pressed the test button and the metal detector sounded an alarm when he scanned the buttocks area, i.e., the alarm sounded not because metal was detected but because Durham was pushing the test button. Defendant Durham then directed that Lira be placed in a contraband watch cell and strip-searched. Lira remained in the contraband watch cell for three days. The cell was 4 feet by 4 feet in size, was filthy, smelled of urine and feces, and had a see-through receptacle for his body waste. Durham and Morrison told Lira he was being put on contraband watch because he failed the metal detector scan. Lira protested. He also complained to lieutenant Downard of the false test by Durham, but she told Lira that he had to remain in the contraband-watch cell until he defecated three times. She refused Lira's request for an x-ray to prove he didn't possess a weapon. Lira asked to speak to captain Castellaw, but was not allowed to do so. Lira complains that the smell in the cell was so bad that he was unable to eat or drink during his three-day stay. After three days, he was taken back to a regular SHU cell.

On or about January 25, 2004, Lira was told by sergeant Bosley that no deadly weapon was found in or on Lira's person nor in his cell property. Lira contends he was returned to SHU housing that was harsher in some unidentified way than the SHU in which he was housed before the razor blade incident.

On or about February 1, 2004, a CDC-115 rule violation report was served on Lira, charging him with possession of a deadly weapon. Lira also apparently was charged with a crime for the same event. He was arraigned in the state superior court on February 24, 2004.

2

On March 1, 2004, a disciplinary hearing may or may not have occurred – Lira's allegations are contradictory on this point. Lira alleges that he was told he was being found guilty of possession of a deadly weapon and that his fate would depend on the outcome of his criminal case in Del Norte County Superior Court. Lira also alleges that the hearing was postponed but hearing officer John Doe found him guilty and assessed 365 days of time credits.

Lira was scheduled to be released on parole on March 10, 2004, after nine years of imprisonment. However, he was not released that day and apparently remained at Pelican Bay until his trial in mid-April.

On April 13, 2004, Lira was acquitted at a jury trial on the charge of possession of a deadly weapon. He was put in a van early the next morning wearing a paper overall, was taken to the parking lot of the Merced County parole department and released with his gate money and his parole clothes box. He went into the parole office naked, although it isn't clear why he was naked -- he alleges he had been transported in a paper overall and had his parole clothes box with him.

Lira alleges that (1) the false charge of possession of a weapon deprived him of his right to due process, and (2) his three-day detention in the contraband watch cell based on that false charge violated his Eighth Amendment rights. Complaint, p. 8.

**DISCUSSION**

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). In its review the court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See id. at 1915A(b)(1),(2). Pro se pleadings must be liberally construed. See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the

violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

     Lira's first claim is that his right to due process was violated based on the false charge that he was in possession of a deadly weapon. Liberally construed, the allegations of the complaint that Lira was detained in more restrictive SHU conditions and beyond his alleged parole date based on the false charge that he was in possession of a dangerous weapon without due process state a cognizable claim for relief. His complaint alleges that defendant Durham fabricated the evidence by holding down the test button on the metal detector to cause it to indicate that Lira had metal on his body. The complaint further alleges that he received a disciplinary charge, and was found guilty, assessed a time credit forfeiture and detained without a real disciplinary hearing ever taking place. The allegation of the false charge plus the absence of a procedurally proper disciplinary hearing combine to state a claim for relief for a due process violation. Although a prisoner generally has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest, such conduct may be actionable if he is not afforded procedural due process in the disciplinary hearing, see Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984). When prison officials initially determine whether a prisoner is to be segregated for administrative reasons and a liberty interest of real substance is implicated, due process requires that they hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated, inform the prisoner of the charges against him or the reasons segregation is being considered, and allow the prisoner to present his views. Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987). Liberally construed, the allegations of the complaint state a due process claim against defendant Durham who fabricated the charge and defendant John Doe who presided over the procedurally deficient "hearing."[1]

---

[1] It is permissible to use Doe defendant designations to refer to defendants whose names are unknown to plaintiff in the complaint. Although the use of Doe defendants is acceptable to withstand dismissal of a complaint at the initial review stage, using Doe defendants creates its own problem: those persons cannot be served with process in this action until they are identified by their real names. The court will not stall this action while plaintiff tries to learn the name of the Doe defendant. Rather, plaintiff must promptly take steps to discover the name of the

1    Lira's second claim is that his Eighth Amendment rights were violated by his 3-day
2 detention in the contraband-watch cell. A prison official violates the Eighth Amendment when
3 two requirements are met: (1) the deprivation alleged must be, objectively, sufficiently serious,
4 see Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)), and (2) the
5 prison official possesses a sufficiently culpable state of mind, see id. (citing Wilson, 501 U.S.
6 at 297). In determining whether a deprivation of a basic necessity is sufficiently serious to
7 satisfy the objective component of an Eighth Amendment claim, a court must consider the
8 circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the
9 time it can be withheld. Substantial deprivations of shelter, food, drinking water or sanitation
10 for four days, for example, are sufficiently serious to satisfy the objective component of an
11 Eighth Amendment claim. See Johnson v. Lewis, 217 F.3d 726, 732-33 (9th Cir. 2000) Hearns
12 v. Terhune, 413 F.3d 1036, 1041-42 (9th Cir. 2005). Giving the pro se complaint the liberal
13 construction to which it is entitled, it appears that Lira has adequately pled an Eighth
14 Amendment claim against defendants Durham, Morrison and Downard for putting and keeping
15 him in the filthy contraband cell for three days based on the known false evidence (i.e., the
16 fabricated metal detector alarm).

17    Lira has not stated a claim against any of the other defendants. Defendant Herdina
18 allegedly conducted the initial investigation when Lira failed to turn in the razor blade and
19 brought Lira to defendant Durham for a second scan. Defendant Horne's involvement allegedly
20 consisted of releasing Lira for his shower and ordering Lira to be brought to the control booth
21 area for a second scan after the initial scan did not reveal any metal on him. Conducting the
22 initial investigation and bringing the inmate to the control booth area for a further investigation
23 after he failed to turn in a razor blade that had been issued to him did not violate any of Lira's

---

26 unnamed defendant and provide that information to the court in an amendment to his pleading. The burden remains on the plaintiff; the court will not undertake to investigate the names and identities of unnamed defendants. If plaintiff has not provided a true name and address for
27 service on any John Doe defendant by **November 2, 2007**, the defendant will be dismissed from the action without prejudice to plaintiff filing a separate action against him if he ever learns his
28 true identity and finds him.

constitutional rights. Plaintiff asked to, but apparently was not allowed to speak to defendant captain Castellaw. Defendants O'Neill and Hern are not alleged to have done anything.

**CONCLUSION**

For the foregoing reasons,

1. The complaint states a claim for relief under 42 U.S.C. § 1983 against defendants Durham and John Doe for a due process violation and against defendants Durham, Morrison and Downard for an Eighth Amendment violation. All other defendants and claims are dismissed.

2. The clerk shall issue a summons and the United States Marshal shall serve, without prepayment of fees, the summons, a copy of the complaint and a copy of all the documents in the case file upon the following defendants, all of whom apparently work at Pelican Bay State Prison:

- correctional officer Durham
- correctional officer M. Downard
- correctional officer Morrison

3. In order to expedite the resolution of this case, the following briefing schedule for dispositive motions is set:

a. No later than **September 21, 2007**, defendants must file and serve a motion for summary judgment or other dispositive motion. If defendants are of the opinion that this case cannot be resolved by summary judgment, they must so inform the court prior to the date the motion is due.

b. Plaintiff's opposition to the summary judgment or other dispositive motion must be filed with the court and served upon defendants no later than **October 26, 2007**. Plaintiff must bear in mind the following notice and warning regarding summary judgment as he prepares his opposition to any summary judgment motion:

> The defendants may make a motion for summary judgment by which they seek to have your case dismissed. A motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure will, if granted, end your case. [¶] Rule 56 tells you what you must do in order to oppose a motion for summary judgment. Generally, summary judgment must be granted when there is no genuine issue of material fact -- that is, if there is no real dispute about any fact that would affect the result of your case, the party who asked for summary

6

judgment is entitled to judgment as a matter of law, which will end your case. When a party you are suing makes a motion for summary judgment that is properly supported by declarations (or other sworn testimony), you cannot simply rely on what your complaint says. Instead, you must set out specific facts in declarations, depositions, answers to interrogatories, or authenticated documents, as provided in Rule 56(e), that contradict the facts shown in the defendants' declarations and documents and show that there is a genuine issue of material fact for trial. If you do not submit your own evidence in opposition, summary judgment, if appropriate, may be entered against you. If summary judgment is granted, your case will be dismissed and there will be no trial. (See Rand v. Rowland, 154 F.3d 952, 962-63 (9th Cir. 1998).

        c.    If defendants wish to file a reply brief, the reply brief must be filed and served no later than **November 9, 2007**.

    4.    All communications by plaintiff with the court must be served on a defendant's counsel by mailing a true copy of the document to defendant's counsel. The court may disregard any document which a party files but fails to send a copy of to his opponent. Until a defendant's counsel has been designated, plaintiff may mail a true copy of the document directly to defendant, but once a defendant is represented by counsel, all documents must be mailed to counsel rather than directly to that defendant.

    5.    Discovery may be taken in accordance with the Federal Rules of Civil Procedure. No further court order under Federal Rule of Civil Procedure 30(a)(2) or Local Rule 16 is required before the parties may conduct discovery.

    6.    Plaintiff is responsible for prosecuting this case. Plaintiff must promptly keep the court informed of any change of address and must comply with the court's orders in a timely fashion. Failure to do so may result in the dismissal of this action for failure to prosecute pursuant to Federal Rule of Civil Procedure 41(b). Plaintiff must file a notice of change of address in every pending case every time he is moved to a new facility.

    7.    Plaintiff is cautioned that he must include the case name and case number for this case on any document he submits to this court for consideration in this case.

    IT IS SO ORDERED.

Dated: 7/31/07_____
                                        SUSAN ILLSTON
                                        United States District Judge